CHICAGO BRIDGE & IRON COMPANY v. O. H. OLSON and Another.[1]

July 24, 1900.

Nos. 12,083—(228).

Contract—Penalty for Delay.

Defendants and the city of Le Sueur entered into a written contract for the construction of a waterworks system and an electric light plant. Defendants sublet to plaintiff the building of the standpipe connected with the waterworks. The original contract contained a forfeiture clause of ten dollars per day for the time of delay in completing the entire work. Held:

Application to Subcontract.

1. That the plaintiff and defendants contemplated in their agreement that the forfeiture clause should apply to plaintiff if its delay should be the cause of its enforcement, and that, if both plaintiff and defendants were the cause of such delay, then each should bear their respective proportion of the damage resulting therefrom.

[1] Reported in 83 N. W. 461.

**Evidence.**

2. That there is no evidence tending to prove that the forfeiture enforced by the city was in any manner caused by the delay of plaintiff in completing the standpipe on time.

**Burden of Proof.**

3. Under the pleadings, defendants assumed the burden of proving that they were damaged by reason of plaintiff's delay in completing the standpipe.

**Offer to Prove.**

4. It was not error to reject an offer to prove that the city council passed the forfeiture resolution because of plaintiff's delay in completing the standpipe.

Action in the district court for Washington county to recover the balance of the contract price for erecting a standpipe. The case was tried before Williston, J., who directed a verdict in favor of plaintiff. From an order granting a motion for a new trial, plaintiff appealed. Reversed.

*Hay & Van Campen*, for appellant.

*Thos. Hessian* and *McLaughlin & Boyesen*, for respondents.

LEWIS, J.

Defendants and the city of Le Sueur, on April 4, 1896, entered into a contract in writing, whereby defendants agreed to furnish all of the material and perform all the labor for the construction of a waterworks system and an electric light plant according to certain specifications then on file in the office of the city clerk. Under the head of "Time of Completion" are found the following provisions:

"The entire work shall be fully completed on or before the 15th day of August, 1896. If, however, the work is let in separate contracts, each part shall be completed in the time mentioned under its proper heading. * * * For any delay in the full completion of the entire work on or before the 15th day of August, 1896, or for any portion of the work when let in separate contract, not including the entire work, beyond the time specified for the completion of such portion, the council shall have the right to deduct from the final estimate, as liquidated damages, the sum of ten dollars per day for the entire period of such delay."

The specifications provided for a standpipe for the waterworks,

and the terms and conditions in reference to it are set out under the heading "Standpipe," and the time for completion of the same was fixed on or before August 15, 1896, but there was no reference to forfeiture for delay in that connection. Defendants relet the building of the standpipe to plaintiff, according to the following proposition and acceptance:

"St. Paul, Minn., April 10th, 1896.

O. H. Olson & Co.,
    Stillwater, Minn.
Gentlemen: We hereby propose to furnish all material and labor necessary to build and erect that portion of your contract at Le Sueur, Minn., under the head of 'standpipe,' for the sum of three thousand and ninety-five dollars ($3,095). All work to be done to the entire satisfaction of the city council and engineer in charge as limited by plans on file, and we to assume all responsibility of doing this work to their entire satisfaction, and to have the same complete on or before the time for completion of same specified in your contract with the city of Le Sueur, Minn.

Yours respectfully,

Chicago Bridge & Iron Co.

S. H. Hedges, Agt.

This contract must be countersigned by Horace E. Horton to be binding on the Chicago Bridge & Iron Co.

Approved by Horace E. Horton, Pt.
Accepted this —— day of April, 1896.

O. H. Olson & Co."

Neither of the plants were completed on August 15, 1896, but on August 22 the electric light plant was turned over to the city, and the city from that time used the plant, although no formal acceptance was made other than the resolution hereinafter stated. Plaintiff completed the standpipe on September 28, and on October 2, 1896, the city council held a meeting, at which the engineer for the city made a report that the light and water plant furnished by defendants was completed, with the following exceptions: That the street lights were one hundred ten volt instead of two hundred twenty, that the portable volt meter had not been furnished, and that the standpipe should be made tighter; whereupon the city council passed the following resolution:

"Resolved, that with the following exceptions the standpipe waterworks, and electric light plant, boiler, pump, and all matters

included in the contract of O. H. Olson & Co., be accepted, the exceptions being as follows: $480 shall be, and hereby is, declared forfeited under the terms of the contract and retained for the delay of forty-eight days since the 15th day of August, 1896. The standpipe is declared defective for leakage, a portable volt meter contracted to be furnished is not furnished, and the street lights are one hundred ten volts, and not two hundred twenty volts, as required. * * *"

The resolution further provided that $175 be retained until such matters be completed.

This action was brought by plaintiff to recover from defendants the sum of $607.13, alleged to be still due for constructing the standpipe. The complaint refers to the contract between the city and defendants, sets up plaintiff's agreement with defendants, and alleges that the contract was complied with, and the standpipe completed and accepted by the city, no special mention being made of the time of completion. Defendants, in answer, plead a counterclaim for damages based on the failure of plaintiff to complete its contract within the time agreed, and that the city had deducted $480 on account of such delay. The reply denied that defendants were damaged by reason of the delay in completing the standpipe, and alleges that the delay in completing the entire plant was caused by defendants themselves. At the close of the evidence plaintiff moved the court to direct a verdict for the plaintiff upon the ground that defendants had failed to show any damages by reason of the failure to complete the standpipe in time. The motion was granted, and the jury directed to return a verdict for plaintiff for $592.65, with interest. Afterwards, upon a motion by defendants, the court granted a new trial, and plaintiff appeals.

1. Was the plaintiff at the close of the trial entitled to judgment for the amount of the verdict, unless defendants succeeded in proving their counterclaim or some part thereof?

This proposition is denied by respondents upon the following ground: That the complaint referred to the contract of defendants with the city as the basis of the agreement between plaintiff and defendants, and therefore it appeared from the complaint that plaintiff contracted with defendants with knowledge of, and in contemplation of, the forfeiture clause; that the reply was a departure;

that plaintiff could not be heard to show under the pleadings that defendants caused the delay, and therefore defendants were entitled to judgment. The complaint does not in any sense admit that plaintiff was the cause of the delay. The mere fact that it refers to the original contract is no such admission, and, on the contrary, the allegation in the complaint is specific that the contract with defendants was performed, and the standpipe accepted. The reply was defensive to the new matter in the answer, and the burden was not in the first instance on the plaintiff to show that it was not responsible for the delay. That issue was tendered by the defendants, denied by the plaintiff, and the burden of proving the issue remained with the defendants.

2. Was there any evidence reasonably tending to show that defendants were damaged on account of the failure of plaintiff to complete the standpipe within the stipulated time?

In the first place, we must determine what the agreement was on that subject. In the absence of any other evidence, we are restricted to the instruments in writing already referred to, and from them alone must discover what was contemplated by the parties in reference to the forfeiture clause. The specifications attached to the original contract between defendants and the city treated the subject "standpipe" under one head, and required that it be completed on or before August 15, 1896. And we think plaintiff and defendants entered into their agreement with reference to the standpipe in contemplation of the forfeiture clause. The specifications in reference to the standpipe do not stand out so independently from the entire contract as to justify the conclusion that only that part was considered by the parties as governing their relations. Plaintiff was charged with the contents of the general contract so far as it contained stipulations of a general character applicable to all divisions and subdivisions, such as definition of terms, bids, description, and time of completion. If, therefore, plaintiff and defendants contracted with reference to the application of the forfeiture clause, to what extent was the plaintiff to become liable in case of a delay in the completion of the two systems and an enforcement of the forfeiture by the city? Was it contemplated by the parties that the plaintiff or the defendants should stand the entire amount, without

reference to which caused the delay, or was it assumed that each party should be responsible for the damage naturally following their own acts? Evidently the latter is the only reasonable interpretation.

It being conceded, then, that plaintiff assumed the responsibility of so much damage as should reasonably follow from its delay, we are now required to examine the record for the evidence tending to show how much, if any, that damage was. As already stated, the report of the engineer and the resolution of the city council furnish proof to the effect that the lighting plant had not been completed October 2, 1896, and the plaintiff had nothing to do with that system. From the same source it also appears that the standpipe at that time contained a leak, and from the other evidence it appears that the standpipe had not been completed and turned over by plaintiff until September 28. We look in vain for any other evidence upon the subject as to which party was responsible for the delay. It cannot be reasonably supposed that the failure of plaintiff to complete the standpipe for the water system was the cause of defendants' delay in completing the lighting system. For all that appears, the defendants would have still been subject to damages by forfeiture at the hands of the city, even if the standpipe had been finished on August 15. We have searched the record without success for evidence tending to show any basis for an equitable division between the parties of the amount of the forfeiture. Defendants apparently stand upon the proposition that, because the standpipe was not completed in time, the plaintiff must bear the result, whether or not defendants had complied with their contract. It is argued that the matters of the voltage and the volt meter were not important, and that the lighting plant was practically completed at least by August 22, and turned over to the city. The lighting plant was turned over in a sense, but not accepted by the city. The contract provided that the question of completion and acceptance was reserved by the engineer and council, and, so far as the record shows, their action in that respect is final.

3. The respondents offered to prove that Mr. Hedges, a representative of plaintiff, attended the meeting of the council, and wanted to know why the money was withheld, and was informed that it

was withheld and declared forfeited for the delay in the completion of the standpipe. This was objected to, and refused, and respondents claim it was error, and that a new trial was properly granted on that account. The offer was rightly refused, because it was immaterial what the council thought about its effect upon the rights of plaintiff. If the record of the council proceedings was wrong, and did not state the facts as to the engineer's report and the council's action, those facts might have been shown, as between plaintiff and defendants. But respondents do not impeach the council record as to the facts stated. They simply tried to prove that the council intended to declare the forfeiture because of plaintiff's delay alone. The council had no authority to put the loss upon plaintiff, and it is immaterial if they passed the resolution with that purpose. The court was right in directing a verdict for the plaintiff as stated.

The order granting a new trial is reversed, with directions to enter judgment for the plaintiff for the amount of the verdict and interest.